Paul Light and Margaret A. Light v. Commissioner.
Light v. Commissioner
Docket No. 79491.
United States Tax Court
T.C. Memo 1961-279; 1961 Tax Ct. Memo LEXIS 70; 20 T.C.M. (CCH) 1475; T.C.M. (RIA) 61279; October 6, 1961
Solomon S. Goldman, Esq., 2400 Canal St., New Orleans, La., for the petitioners. Robert B. Alexander, Jr., Esq., for the respondent. FISHER
Memorandum Opinion FISHER, Judge: Respondent determined a deficiency in income tax of petitioners for the taxable year 1956 in the amount of $1,547.37. *
*71 Respondent concedes that petitioners are entitled to exclude from gross income the amount of $188.54 incurred by Paul Light for transportation, meals, and lodging in moving himself and family from New Orleans, Louisiana, to Newark, New Jersey, Paul having been reimbursed in that amount by his employer. Petitioners concede, accepting authority of (C.A. 10, 1958), certiorari denied , that they are not entitled to a deduction of $390.65 for meals and lodging incurred while traveling from Newark, New Jersey, to New Orleans, Louisiana, to accept employment with Pan-American Life Insurance Company, a new employer. The issues presented to us for decision are whether or not, under section 62(2)(B) and (C) or section 162(a), of the Code of 1954, petitioners are entitled to the deductions claimed - (a) in the amount of $1,669.01 paid by Paul (hereinafter referred to as petitioner) for meals and lodging in Newark from January 5 to April 27, 1956, for which he was reimbursed by his employer; and (b) in the amount of $149.35 paid by petitioner for hotel accommodations and meals for himself and wife and for maintenance *72 and expense of his children in Newark (while arranging permanent living accommodations) for the period May 3 to 10, 1956, for which he was reimbursed by his employer; and (c) in the amount of $469 paid by petitioner during the period January 5 to April 26, 1956, for four trips from Newark to New Orleans for the purpose of visiting his family and arranging for the sale of his house, for which expenditures he was reimbursed by his employer. Petitioners are husband and wife and reside at New Orleans, Louisiana. Petitioners filed a joint income tax return for the taxable year 1956 with the district director of internal revenue at New Orleans, Louisiana. In June 1939, petitioner secured employment in a managerial capacity with the Travelers Insurance Company of Hartford, Connecticut, a company engaged in the business of writing life, health, and accident insurance throughout the United States, and in February 1951, he was assigned to duty at its New Orleans Branch Office, becoming manager thereof. Prior to December 1, 1955, petitioner acquired ownership of a home located at 95 South Wren Street, New Orleans, Louisiana, which he occupied as a residence with his wife and his three *73 children, then ages 13 years, 10 years, and 1 year, respectively. Without solicitation therefor on the part of petitioner, the Travelers Insurance Company notified him on December 1, 1955, that he was being transferred to its Newark, New Jersey, office as manager of its branch office there.
The Travelers Insurance Company wrote a letter to petitioner on December 2, 1955, regarding this transfer, reading as follows: We have been advised of your transfer from New Orleans to Newark. It would be our suggestion that you secure three written estimates for moving by motor truck, and return the figures to this Department for approval with your recommendation as to the firm you desire to have do the work. When you submit them, please forward the letters from the moving firms containing their estimates. You should be certain to secure adequate all-risk coverage, free from coinsurance and deductible clauses, which will insure your household goods while in transit. If it should be necessary for you to store your furniture, it has been found much more advantageous, both to the Company and the representative to arrange for the storage on a storage-in-transit basis in the representative's *74 new headquarters. When you reimburse the moving concern, you should obtain from them a receipted statement covering the moving items, an itemization of the packing charges, and certified weight slips showing the gross, tare, and net weights of the truck and furniture moved. These papers should be attached to the account that you submit covering your transfer expenses. We understand that you plan to travel to Newark alone and that you will arrange to retain occupancy of your present home until you have located something satisfactory in your new headquarters. The Company will reimburse you for the necessary transportation and meal expense in traveling to Newark and, after your arrival there, in full for your room and meal expenses for a reasonable period of time while you are maintaining your home in New Orleans. You should, after the first day or two in the hotel, locate for yourself a comfortable room in a private home. This is the procedure that has been followed by all of our other representatives who have been transferred recently, and in every instance this arrangement has been found to be most satisfactory. After your arrival in Newark and after you have had an opportunity *75 to look into the housing situation, we would like to have you write to us regarding your plans and prospects for locating a suitable home there. Also, for accounting reasons, we would appreciate your submitting the accounts covering your transfer expenses on a two weeks' basis. We understand that you own your present home, and we would appreciate your keeping us fully advised regarding the sale of the property. When arranging for your new home in Newark, please try to have a clause included which will cancel the lease upon payment of one month's rent in the event you are transferred out of the city. If you have an automobile, no doubt you will want to drive it to Newark, accompanied by your family, at the time of the final transfer, and the Company will reimburse you for the mileage covered over the most direct route at the prevailing rate per mile and for the room and meal expenses incurred en route. If an advance will be required to take care of the preliminary expenses in connection with this transfer, we will gladly forward one if you will let us know the necessary amount and when it will be needed. Later on, when you have located a home and are arranging to move your family *76 and furniture, we will be glad to increase your advances to an amount adequate to take care of these expenses. It is, of course, our desire to have this transfer made with the least possible inconvenience to you and your family, and if there are any questions concerning the move with which we can be of assistance, you should arrange to submit them to us as soon as possible. Petitioner, unaccompanied by any member of his family, left New Orleans for Newark, on or about January 5, 1956, and upon arrival at the latter city, performed his duties for his employer and at the same time sought satisfactory living accommodations there for his family and himself. Between that date and April 29, 1956, he made about four trips to New Orleans for the purpose of visiting his family, arranging for the sale of his New Orleans residence, and seeing that his children of school age continued attending schools of New Orleans. Having sold his New Orleans residence and having apparently made arrangements for the sublease of a furnished home for his family and himself in Newark, petitioner and his family departed from New Orleans on April 28, 1956, by automobile for Newark, and arrived there about *77 May 3, 1956. Due to some misunderstanding between the tenant in the Newark residence and the owner thereof, several days' delay was incurred in procuring the consent of the owner for the sublease, but having worked out a settlement between the owner and the tenant of the Newark home, petitioner and his family were able to move into the home on May 10, 1956. From May 3 to 10, 1956, petitioner and his wife lived at a hotel in Newark and his children were placed with relatives in a nearby city. About January 5, 1956, to April 27, 1956, petitioner incurred expenses in Newark for meals and lodging in the sum of $1,699.01, all of which was reimbursed by his employer. During the period April 28, 1956, to May 3, 1956, petitioner incurred expenses in transporting his family and himself from New Orleans to Newark, and for meals and lodging en route in the sum of $188.54, for which he was reimbursed by his employer. During the period May 3 to 10, 1956, petitioner incurred expenses in Newark for hotel accommodations and meals for his wife and himself while arranging permanent living accommodations, and for the maintenance and expense of his children during said period in the sum of $149.35, *78 which was reimbursed by his employer. During the period January 5 to April 26, 1956, for the four trips made by petitioner to New Orleans for the purposes indicated above, petitioner incurred expenses of $469, which were reimbursed by his employer. While employed in Newark petitioner received an offer of employment from the Pan-American Life Insurance Company at its home office in New Orleans, and received from that company its letter of May 23, 1956, reading as follows: To make it official and definite, I shall summarize Pan-American's offer to you as discussed and agreed upon among the senior officials of the Company. Your title would be Superintendent of Agents. During the period of a year or two, while we are getting established in the personal Accident and Sickness field, you would be primarily responsible for introducing this new coverage to our Field Organization and for training our Home Office Agency Department in the techniques. Our aim would be to integrate it with our sale of Ordinary and Group insurance so as to preserve a proper balance between the coverages. The importance of thorough training cannot be overemphasized, particularly since the underwriting in the *79 field of guaranteed renewable policies is fraught with many dangers. After the operation has been launched and is working smoothly, you would be given an important territory in which you would exercise over-all supervision as do the other superintendents in their territories. Your advancement from that point would be dependent on your achievement - as is the case with all of us. Your starting salary would be $15,000 and, in addition, for the year 1956 you would receive a full month's salary as a Christmas Bonus. Thus, if you started on September 1st, you would receive five months' salary for four months' work. On January 1, 1957, your base salary would be increased to $16,500 and when you again add the Christmas Bonus, your total take for 1957 would be $17,875. On January 1, 1958, your base salary would be increased to $18,000 which, with the bonus, gives you a total for that year of $19,500. We will pay for your moving expenses from Newark to New Orleans and we will lend you whatever assistance you need and we can reasonably furnish in buying a house. We cannot loan the money to you direct but, through our connections, are confident we can get a mortgage for you on favorable *80 terms. The rest of the story of Pan-American, its future potential, the opportunities for your advancement, etc., you already know from your conversations with us. But if I have overlooked some points, please let me know. Will look forward to having your decision as soon as possible. With all good wishes. Sincerely yours, Senior Vice President About July 31, 1956, petitioner left Newark for New Orleans to accept the position with Pan-American Life Insurance Company and between that date and August 30, 1956, while traveling to New Orleans and securing permanent living accommodations in New Orleans, petitioner and his family incurred expenses for meals and lodging in the sum of $390.65, which expenses were reimbursed by the Pan-American Life Insurance Company. When petitioner left New Orleans on January 5, 1956, he only took with him a limited amount of clothing and toilet articles of approximately the weight permitted by air lines of 40 pounds, leaving all other clothing and his golf equipment in New Orleans, where it remained until leaving with his family on or about April 26, 1956. Petitioner notified publishers of magazines to which he subscribed by letter dated April 20, 1956, to *81 change his mailing address from New Orleans to Newark. He closed his accounts with the following merchants in New Orleans on the dates set forth: D. H. Holmes Co.
May 19, 1956
Porters Clothing Store
May 24, 1956
Leon Godchaux
May 24, 1956
Kreeger Company
May 26, 1956
Petitioner discontinued his New Orleans newspaper on April 27, 1956, and notified Gulf Oil Company of his change of address for credit card purposes on May 19, 1956. Notice was given to the Veterans Administration, guarantor on a mortgage loan, of his change of address on April 20, 1956, and his first monthly bank statement of the Hibernia National Bank of New Orleans, Louisiana, showing change of address was the statement showing balance of April 30, 1956. Petitioner opened his first bank account in New Jersey with the North Jersey Trust Company of Ridgewood, New Jersey, on May 18, 1956. Petitioner and his wife continued contributions to the Lake Vista Methodist Church of New Orleans, Louisiana, as late as April 23, 1956. All of petitioner's private correspondence, records, etc., remained in New Orleans until about April 27, 1956, when they were sent to Newark. While in Newark, between *82 January 5 and April 24, 1956, petitioner lived in hotels there on a night-to-night basis and returned to New Orleans on four week-ends as set forth below, and during his absence from Newark he retained no hotel accommodations there and left none of his personal effects in Newark. The week-end trips to New Orleans were as follows: From January 21, 1956, to January 23, 1956 From February 2, 1956, to February 5, 1956 From February 24, 1956, to February 27, 1956 From March 22, 1956, to March 25, 1956. As to each of the three contested issues, petitioner bears the burden of proof of error in respondent's determination. Item of $1,669.01 Petitioner paid $1,669.01 for meals and lodging in Newark from about January 5 to April 27, 1956. The statutory provisions referred to, on brief, upon which he bases his claim for deduction of this amount are sections 62(2)(B) and (C) [1] and section 162(a)(2) [2] of the Code of 1954. *83 The factual support offered is, in substance, that in proceeding from New Orleans to Newark, he took about 40 pounds of clothing and toilet articles; that his golf equipment remained in New Orleans; that he continued his church affiliation in New Orleans; that he continued his bank account in New Orleans; that his charge accounts remained unchanged in New Orleans; that his newspapers and magazines continued to be delivered to his New Orleans home; that he registered in Newark hotels as a transient, on a night-to-night basis; and checked out, taking with him all of his baggage, each week-end on which he returned to New Orleans. In addition, he emphasizes that he followed his employer's instructions in the letter of December 2, 1955, which he construes to mean that his employment was only temporary and not indefinite or relatively permanent. We cannot agree with petitioner's interpretation of the facts. There were no strings tied to his employment, and no conditions thereto which are here significant. His employer transferred him to Newark to manage the Newark office. He accepted the transfer, proceeded to Newark, and upon arrival in Newark (about January 5, 1956), entered upon and *84 performed his duties (at the same time seeking satisfactory living accommodations for his family and himself). There is no evidence that he was on probation or that his job was to be terminated at the end of a brief period of time. To the contrary, the surrounding circumstances and the employer's letter of December 2, 1955, strongly indicate that his job was relatively permanent. When the letter of December 2, 1955, refers to "a reasonable period of time" it is clear that its reference is to the period for paying his expenses. Where it uses the expression "while you are maintaining your home in New Orleans," it could hardly have intended to establish a technical construction of the word "home" for tax purposes when the Supreme Court itself has had so much difficulty with the problem. The letter, we think, merely recognizes it would take time and effort to dispose of his property and arrange to bring his family to Newark and that this was a factor in determining a reasonable time during which the employer would reimburse petitioner for the expenditures referred to in the letter. Likewise, the said letter refers to the "time of final transfer," it clearly means the transfer or transporting *85 of petitioner's family to Newark, and not to any lack of permanency or other condition to petitioner's employment. The significant fact is that petitioner reported for duty in Newark about January 5, 1956, and at once entered upon and continued to perform his duties thereafter in Newark. Although circumstances required some activity on his part to straighten out his personal affairs (hardly an unusual circumstance), his regular place of employment or post of duty was in Newark from the time he so reported and undertook to carry on his work there. We do not think this is an issue requiring a re-analysis in this opinion of all or a large number of the many opinions which have dealt with the subject matter. Largely, each is dependent upon its own facts. Some are difficult to reconcile. Our view is briefly but adequately stated in in which, quoting from , we said, in part (p. 1263): "For the purposes of the statute, a taxpayer's home means his place of business, employment, or post or station at which he is employed." See also *86 (C.A. 5, 1959), affirming ; (C.A. 4, 1945) affirming a Memorandum Opinion of this Court; . Since we hold that, from the time petitioner entered upon his duties at Newark, his place of employment, or post of duty or station at which he was employed was in Newark, and that his employment was not in the nature of a temporary employment, it follows that his "home" for tax purposes was in Newark during the period here involved, and it further follows that he expenditures in Newark in the amount of $1,669.01 for meals and lodging for the period referred to above did not consist of expenses for meals and lodging paid by him while away from home in connection with the performance by him of services as an employee within the meaning of section 62 or while away from home in the pursuit of a trade or business within the meaning of section 162(a)(2). Said expenses are personal or living expenses within the meaning of section 62, and no deduction therefor is allowable. Item of $149.35 A reading of petitioner's reference to this item on brief leaves the Court in doubt *87 as to whether or not petitioner contests the item. The expense was incurred by petitioner during the period from May 3, to 10, 1956, in Newark for hotel accommodations and meals for himself and his wife and for maintenance and expense for his children while arranging permanent living accommodations. By this time petitioner and his family had moved to Newark. The house in New Orleans had been sold and arrangements had been made to sublease a furnished home in Newark. Due to some misunderstanding between the tenant and the owner, there was a delay of a few days, but petitioner and his family moved in May 10, 1956. Petitioner cites no authority supporting allowance of the deduction. We think it quite apparent that the expenditures were personal and were not made while away from home. The claimed deduction, therefore, is disallowed. Item of $469 During the period from January 5, to April 29, 1956, petitioner made about four trips to and from Newark to New Orleans for the purpose of visiting his family and arranging for the sale of his New Orleans residence. The expense incurred was $469. Petitioner's briefs present no argument or citation of authority expressly referring to *88 this item. As we see it, the expenses for the four trips to New Orleans were personal, and it seems obvious that they were not paid or incurred by petitioner in connection with the performance by him of any services as an employee within the meaning of section 62(2)(B) or (C) or in pursuit of a trade or business within the meaning of section 162(a)(2). We, accordingly, sustain the disallowance of the $469 item. Decision will be entered under Rule 50. Footnotes
*. This figure was corrected by an order signed by Judge Fisher, dated October 9, 1961.↩
1. SEC. 62. ADJUSTED GROSS INCOME DEFINED. * * *
(2) Trade and business deductions of employees. - * * *
(B) Expenses for travel away from home. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee. (C) Transportation expenses. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee. * * *↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and * * *↩